Good morning, Your Honor. Beau Sterling on behalf of the appellant, David Kent Fitch. And I am going to try to reserve a couple minutes of my time. I'd like to start with the Sixth Amendment issue, if I may. The issue here is whether the government violated Mr. Fitch's Sixth Amendment rights to a speedy trial when it waited over four years to bring the criminal indictment against him with regard to the charges at issue in this particular trial and appeal. We turn first to United States v. Dillingham, which tells us that the Sixth Amendment time period begins to run when we have an accused, and the person becomes an accused when he is arrested. We also look at Barker v. Wingo, of course, to take a look once we've decided that time has started to accrue, whether there's a valid reason for the delay that the government can cite. We look at the length of the delay, the reason for the delay, and whether the accused has certain rights. But what was he arrested for here? He was not arrested for the bank fraud or the money laundering or fraudulent use of an access device. Well, our assertion, certainly, Your Honor, is that he was, in fact, arrested for those charges. He was arrested for something. Yes, Your Honor. He was arrested because there was a missing person alert for his wife, Maria Boese, and because he had false documents that he presented to police officers when he was pulled over for speeding. Yes. I guess what I'm puzzled by is that, you know, I'm troubled by the fact that there was this four-and-a-half-year hiatus where the complaint that was prepared back in 2000 clearly said that he confessed to the bank fraud, money laundering, and fraudulent use of an access. But Dillingham teaches that you measure the Sixth Amendment violation from either the formal indictment or information, so we're not talking about that here, actual restraints imposed by arrest and holding to answer a criminal charge. I guess that's what hangs me up a little bit. How do we conceptualize what arrest means in the context of the facts of this case? I think we need to look not at what the government actually charges him with first, certainly. We need to look at what the government had at its disposal, what it could have charged him with at the time of the arrest. I haven't found any case that supports that. I mean, there's some at least superficial common sense to that in a way. But when somebody, you know, can be arrested but is not arrested for something, does that kick in the Dillingham standard? Well, that's certainly our argument in this case, Your Honor. And you're right, we are on uncharted territory here. And you haven't got a case that says that, right? We don't have a case. Our best argument is we're simply arguing from Dillingham and the statement by the Supreme Court that we don't necessarily have to await indictment or information. And we're also relying on Marion pretty well says that we're not to worry about pre-accusation delay, doesn't it? Well, we're not. Right now we're talking about the Sixth Amendment charge. Oh, I understand what you're talking about. But I guess I'm trying to figure out a way to put your case in with the cases which my good colleague has pointed out and which other cases that I have here. And I guess I'm just trying to figure out how I'm going to get it there. Yeah, I mean, I understand what you're saying about Marion. But I think we have to look specifically at Dillingham and the specific language that the Supreme Court has given us, which says that the invocation of the speedy trial provision thus need not await the indictment, information, or other formal charges. And when we're looking at a constitutional right, like the right to a speedy trial, I think we need to look at what the government had in particular. Do you think there's enough facts here in this record to determine what exactly he was arrested for? We have the complaint and we have some facts here, I guess, that suggest that he was arrested for the gun charge or whatever else. But maybe there needs to be some factual exploration to find out exactly what happened way back then and what the police were intending to do and what the concept of arrest was factually at that particular time. Is that something we should think about? That's definitely something that the Court should think about. And we have a lot in the record here. Now, it's a little tricky because the arrest initially was somewhat fortuitous, as it often is for the police. He was pulled over for speeding. We got the hit on Maria Bosie's car. And then we got Fitch eventually confessing to have the fraudulent documents. But at that time, we already had Michael Novin in England calling over to check on Maria Bosie, reporting her as missing. The park police were investigating that. Well, I guess they could have arrested him for the bank fraud charges and other charges that ultimately came into being four or so years later. But the question is whether they did arrest him for that. And I guess I'm going to ask your adversary some of those questions as well, I imagine. Yeah. I mean, our argument certainly is that he was arrested for that. And if we look more into the factual record, we know that, according to the government, it's really not disputed that Fitch was already removing money from the ATM account in September and also writing the fraudulent check, which was part of what he did. He fessed up to it all. Right, right. You have the complaint here. The complaint was drafted. Right. That could have easily supported his arrest for that. And the discovery was basically or almost essentially the same between the two cases. You know, we had a couple of depositions that were taken after that point. But substantially everything was in place at the time of what would have been the first trial, except for the plea. Is there anything in the record that would indicate when the investigation stopped or was given up? Well, I'm not sure about that. I mean, I know the government can certainly answer that question better. Billingham doesn't say anything about a situation where you have an ongoing investigation. That's correct, Your Honor. And we do know that depositions were taken of some of the witnesses going, you know, years after the time of the arrest. But our argument would be that those were minor points in relation to all the evidence that the government had. So who has the burden here? Well, that's a good question, Your Honor. I think that it's certainly up to Mr. Fitch to come forward with some sort of showing, which he has done in this case. What's my standard of review here? Well, the standard of review is abuse of discretion. So if, in fact, I've got not facts in front of me which would really lead us to where we need to do, or if, in fact, I've got ideas that I might have ought to have done a little bit more discovery, isn't that really your problem? Well, it is, Your Honor. But, I mean, we also have ñ there is a kind of a mixed question of fact or law here because we do need to decide as a matter of law what the Sixth Amendment requires in this case. Well, we understand that, but it seems to me there's pretty good case law on what the Sixth Amendment requires. If at all, the best one could say is there may not be enough factual evidence in this record to decide it, which then would put the burden on you, wouldn't it? I'm not going to concede that, but I think you're right, Your Honor. Because, as I understand it, the determination of when the evidence is available to the prosecution is seldom clear-cut and reasonable persons often will reach conflicting conclusions. That's right out of the case law. Well, that's true, Your Honor. But, I mean, we can also look at cases such as United States v. Shell, where it says that there's ñ  But, I mean, we can also look at cases such as United States v. Shell, where it says that there's a lot of evidence there, when the delay is great and attributable to the government. So, I mean, I think we're entitled to certain presumptions along that ñ that line. And unless the Court has any other questions right now, I'm going to try to reserve a little bit of time. Okay. Thank you. Good morning. May it please the Court. My name is Gregory Dam. I'm an assistant United States attorney from Las Vegas, Nevada, representing the United States in this matter. And I was the original prosecutor in this case who sought the indictment in 2000, and I was also the prosecutor who sought the second indictment in 2004. I would like to clear up a couple of matters that appear in the appellant's opening brief. The appellant makes the statement in two different instances that the complaint in 2000 charged Fitch with most of the crimes charged in 2004. That simply is incorrect, totally incorrect. What happened in 2000 is that Mr. Fitch was indicted initial ñ or was charged by complaint initially with being a felon in possession of two firearms. The gun charge. The gun charge. That's correct. Now, true, there was a narrative in the affidavit supporting the complaint which explained how the FBI came into contact with Mr. Fitch and found the firearms, which necessarily included a discussion about Maria Boese. But those were ñ the Maria Boese conduct was not what was charged back in 2000. He was charged with the firearms offenses. The ñ he was then indicted for the firearms offenses. There was a superseding indictment that charged him with using false identification documents and ñ You know, time is precious here, and I do have some questions I'd like to ask you  Sure. Tell me, since you're the prosecutor, why did the government wait four years before they charged him with the bank fraud, money laundering and fraudulent use of an access device charges? That's a very good question. That's why I asked it. He only asks good questions. What happened is, is when we superseded the indictment the last time in the year 2000, I think it was only five weeks after that, that I was notified by defense counsel that the defendant intended to plead to everything that we charged him with. We ñ the investigation was proceeding on the other matters, but kind of in the middle of the investigation, the defense just announces that they're going to plead guilty to everything, which they did. Which really kind of suspended, in a certain sense, the urgency for us to move forward on the investigation with respect to Maria Boese, because she had never been located. We had always hoped that we would find her. Well, didn't you have enough evidence to charge him with the bank fraud and money laundering and fraudulent use, et cetera, back in 2000? It seems that you waited four years. I can understand why you wanted to find out whether she was killed or not. And certainly there's no statute of limitations that you need to be concerned about when it comes to murder. But I don't understand what you needed to do during that four-year period of time in order to prosecute him for the other crimes. Now, that's explained in our supplemental excerpt of record at document No. 46. And this is the order and report and recommendation of the magistrate court which explains some of the things that were going on between 2000 and 2004 on behalf of the United States. You mean one, separate apart from looking for Maria Boese? What did you have to do? We instituted MLABS, or mutual legal assistance treaty requests, to both Romania, Bucharest, Romania. I understand that. But what did that have to do with bank fraud and money laundering and fraudulent use of the access device? That was clearly established back in 2000. Well, it was and it wasn't. Mr. Fitch maintained that since he and Maria Boese were married, that the property that he took was community property and he was entitled to do so. I think that was a very spurious argument, but we wanted to flesh out the fact that there was no evidence that Maria Boese was involved in any of the fraudulent  And that's what you've explained. I mean, I'm not 100 percent convinced I see a nexus that supports the 4-year interregnum. But be that as it may, let me move on, if I may, to the other issue that concerns me, and that is the, of course, whether or not the additional 20 years was substantively unreasonable in light of the circumstances of this case. But let me be focused, if I may, by finding what the actual findings were. You needed findings here in any event by the judge. And I think if I have it correctly, he's found by clear and convincing evidence the following. I'm not so sure that all of this is supported by the record, and maybe you can help me, that he failed to report Boese's disappearance to the police. I think that's pretty much clearly established in the record, correct? Yes, it is. Two, that he told various inconsistent stories about Boese's whereabouts. I think that's also supported. You agree with that, I guess, right? Yes, certainly. Number three, Fitch tried to sell Boese's clothing and personal effects, including her car. I may have missed something, but I don't find any support in the record for that finding. Can you guide me where that might be in the record here? Because I don't see it. There apparently was the testimony of one witness during trial who indicated that Fitch tried to sell women's clothing to her, which we presume was Maria Boese's clothing. But there's nothing here that says it was Boese's clothing. Well, that's all that Mr. Fitch had was Maria Boese's. But that's hardly clear and convincing evidence here to support that particular finding, I suspect. That he was trying to sell her clothing? Yes, and personal effects, including her car. I just did not find any support for that finding in the record. As I've indicated, I believe there was testimony of one witness called on her. Maybe some inferences is what you rely upon. That's correct. I think it is clear and convincing, but be that as it may, Fitch married Mulatto without first seeking a divorce from Boese. I guess that's in the PSR, which wasn't objected to, correct? Yes, that's correct. So he can rely upon that. And it was also in the government sentencing memorandum, which, interestingly enough, the defendant relies upon and cites to. There were no objections to the PSR in respect to those aspects of it, correct? Correct. And defense counsel cites to it in his opening brief. And then you have the last two, that Fitch had possession of Boese's checkbook, credit cards, et cetera. That's pretty much clearly established, I suspect. And Fitch raided Boese's accounts and credit cards by deception, either disguises or forgery. I guess there's support for that. Do you think that collectively that satisfies the clear and convincing evidence standard? Obviously, you do. Well, those are – I'm sorry. Is there anything else? Yes. Those are just the specific factors that the trial court ticked off. He also indicated that he had read the government sentencing memorandum and concurred with the recommendation by the government in its sentencing memorandum. Thereby, I would suggest he adopted the sentencing memorandum as well as the pre-sentence report. I don't know whether we can consider the memorandum. We have to find separate evidence to support his findings, don't we? Well, when neither the memorandum nor the pre-sentence report were objected to, it's I don't know of anything that requires anybody to object to what's in a memorandum at the risk of waiving rights. Well, not only didn't they object to it, but they cite to it in their opening brief. But that aside, the judge had more than – the other thing is, as the judge noted, he was the trial judge. He sat through the entire trial, listened to all of the testimony. And so he cites that as well as the specific factors that you have just enunciated. Which, to my way of thinking, paints a very chilling picture of the conduct that Mr. Fitch was engaged in and does support by any standard. Do you think there's an outer limit in terms of the substantive reasonableness facet, substantive reasonable facet of a sentencing protocol? Is there an outer limit here? I know 20 years you say is okay, right? What if it was 30 years? What if it was 40 years? Does there come a point in time in effect the sentence by the judge would be tantamount to as if somebody was actually charged and convicted by a jury of murder? Is there a line to be drawn here someplace? I suppose there might be. But in this case, we don't come anywhere close to that line, because the statutory maximum penalty for bank fraud was 30 years, and the judge imposed a sentence of 21, almost 22 years, so there was no limit.   And that's what you're saying. That's the violation is what you're saying. Correct. Not to mention the fact that there were multiple counts that could have been the sentences could have been imposed consecutively, which have raised the penalty to a much higher degree. I'm in kind of a unique situation because I have to render these types of sentences as a district court judge. Sure. And then we know that as a circuit court judge, you know, we have to give some deference, I guess, to the – hopefully to the district court judge's determination. And where we draw the line beyond which something is no longer substantively unreasonable is a tough type of thing to really conceptualize, isn't it? Well, I suppose it may be, but there is precedent in this case. There's another case that I prosecuted where the – this Court upheld, under similar circumstances, the statutory maximum for bank fraud at that time, which was 20 years. Maybe the statutory maximum is going to help you on this, but I still have an apprendi question. Sure. How can you get a 15-level upward departure based on – basically on suspicion and then – and say on the record that that's what you're doing without a fact being found by a jury under the apprendi rule? Well, I don't think there's any suspicion about what happened to Maria Bosie whatsoever. The evidence is crystal clear. The jury found the facts necessary to convict Mr. Fitch for the offenses for which he was charged, but the – as the trial judge pointed out, this is not just a simple theft case. This is a case that was occasioned by the murder of the victim. But not enough evidence. The jury knows for sure. Is there any noncircumstantial evidence that she's not living in Argentina or somewhere? Well, yes, there is circumstantial evidence. No one that Maria Bosie was close to, and particularly her mother, has seen or heard from her since September of 1999. There was a very poignant – Well, there's no – there's no – doesn't seem logical that she would have gone to Argentina without a passport. Well, with her – without her passport, without her credit cards, without her personal identifying documents, without her – I mean, there's a lot of personal stuff in there that I could say, oh, not a big deal. But the passport seems pretty incredible. I agree. But why didn't you charge her for murder? Why didn't you bring a prosecution for murder? That's a great question. I always hope – It's my second great question. Don't tell him that much. This guy's got enough going for him. I'd always hope that we would find Maria Bosie's body to put some closure to this case. But as you well know, in the Federal Government, we have a limited jurisdiction to charge violent crimes, and in this case, murder. We don't know exactly where Mr. Fitch disposed of Maria Bosie's body. We had some belief that he rented a boat and dumped her body in the – in Lake Mead. We had some belief that he went to the Grand Canyon to some remote area and – You don't need the body for being a murder charge against them. No, but you need venue. And we didn't have venue. We don't know that she was murdered on a Federal enclave. But what comes out of the wash is that you couldn't get him for murder directly, so in effect you got him indirectly for murder, right? We certainly did. But even getting him indirectly for murder, if I look at the sentencing guidelines, he didn't get any first-degree murder sentence. He didn't even get a second-degree murder sentence. He did not. He got a substantial break from the trial court. All right. And that's what I think Judge Goodwin absolves any apprendi problem, in my opinion. Thank you very much. Thank you. I do think that this case is outside the bounds of substantive reasonableness. That's certainly our argument. Well, I understand your argument. And what's my standard of review, Counselor? Well, I mean, again, we've got to give deference to the district court, Judge. Well, I mean, if you go to procedural review, then I can get myself in there and do something, nose around, and I can decide what I think. When I go to the substantive review, I've got to give some deference here, haven't I not? And you would agree with me, would you not, that this sentence, there's nothing about this sentence which would even meet one for second-degree murder. You'd agree with that, wouldn't you? If the Court accepts that there's clear and convincing evidence for the murder, then we're not going to say that this was – I mean, that's not the essence of our argument. I mean, our argument is that there is not. Would you also agree that 41 to 50 is substantively unreasonable for a sentence for first-degree murder? Absolutely, Your Honor. But again, there isn't clear and convincing evidence of murder in this case. There's circumstantial evidence and there's speculation. My time is about up, so unless the Court has any questions, I'll rely on the briefs of the remaining arguments. Thank you, Your Honor. Thank you very much. Case 07-10607, U.S. of America v. Fitch, is submitted.
judges: Block, Goodwin, Smith N. R.